1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**
9                    **CENTRAL DISTRICT OF CALIFORNIA**
10
11
12  RAFAEL ARROYO, JR.,              )    CV 19-7244-RSWL-SS
                                     )
13              Plaintiff,           )
                                     )    **ORDER re: Plaintiff's**
14        v.                         )    **Application for Default**
                                     )    **Judgment** [15]
15                                   )
                                     )
16  THRIFTY PAYLESS, INC., a         )
    California Corporation; and      )
17  DOES 1 through 10,               )
                                     )
18                                   )
                Defendants.          )
19                                   )
                                     )
20  _____ )

21        Plaintiff Rafael Arroyo, Jr. ("Plaintiff") claims

22  Defendant Thrifty Payless, Inc. ("Defendant") violated

23  the Americans with Disabilities Act ("ADA") and

24  California's Unruh Civil Rights Act ("Unruh Act").

25  Currently before the Court is Plaintiff's Application

26  for Default Judgment ("Application") [15].  Having

27  reviewed all papers submitted pertaining to this

28  Application, the Court **NOW FINDS AND RULES AS FOLLOWS:**

                                1

1  the Court **GRANTS in part** Plaintiff's Application as to
2  Plaintiffs ADA claim and **DECLINES** to exercise
3  supplemental jurisdiction over Plaintiff's Unruh Act
4  claim.

**I. BACKGROUND**

**A.   Factual Background**

Plaintiff is a paraplegic who needs a wheelchair
for mobility.  Compl. ¶ 1.  Defendant owned and owns
the Rite Aid ("Store") located at or about 1433
Glendale Blvd., Los Angeles, California.  Id. ¶¶ 2-3.
Plaintiff went to the Store in July 2019 to avail
himself of its goods and assess the Store for
compliance with disability access laws.  Id. ¶ 8.  On
the date of Plaintiff's visit, Plaintiff alleges that
Defendant failed to provide accessible sales counters
in the Thrifty ice cream section of the Store.  Id. ¶
10.  Defendant continues to fail to provide accessible
sales counters.  Id.  Defendant also failed and
currently fails to provide an accessible restroom.  Id.
¶ 15.

Plaintiff personally encountered the lack of
accessible sales counters.  Id. ¶ 12.  Plaintiff did
not personally encounter the lack of accessible
restroom.  Id. ¶ 15.  Plaintiff intends to return to
the Store to avail himself of its goods and check its
compliance with disability access laws, but he is
currently deterred from doing so because of the
existing barriers.  Id. ¶ 18.

**B.   <u>Procedural Background</u>**

Plaintiff filed his Complaint [1] on August 21, 2019, alleging Defendant violated the ADA and Unruh Act.  Plaintiff served Defendant [9] by service on its registered agent on August 29, 2019.  As of yet, Defendant has not pleaded, answered, or otherwise appeared in this Action.  The Clerk of Court entered Defendant's default [11] on September 23, 2019.

On November 14, 2019, Plaintiff filed the present Application [15] and timely served Defendant [15-13]. Plaintiff seeks an order enjoining Defendant to provide: (1) accessible sales counters; and (2) an accessible restroom.  Plaintiff also seeks an award totaling $8,321 in statutory damages, attorneys' fees, and costs.

## II. DISCUSSION

**A.   <u>Legal Standard</u>**

Federal Rule of Civil Procedure ("Rule") 55(b) authorizes a district court to grant default judgment. Pursuant to Local Rule 55-1, the party moving for default judgment must submit a declaration establishing: (1) when and against which party default was entered; (2) on which pleading default was entered; (3) whether the defaulting party is a minor, incompetent person, or active service member; and (4) proper service.  Upon default, all factual allegations in the complaint, except those relating to damages, are assumed to be true.  <u>TeleVideo Sys., Inc.</u>

1   v. Heidenthal, 826 F.2d 915, 917-18 (9th Cir. 1987)

2   (quoting Geddes v. United Fin. Grp., 559 F.2d 557, 560

3   (9th Cir. 1977)).

4        In exercising its discretion to grant default

5   judgment, the court must consider the following

6   factors: (1) possibility of prejudice to the plaintiff,

7   (2) merits of the substantive claim, (3) sufficiency of

8   the complaint, (4) sum of money at stake,

9   (5) possibility of disputes regarding material facts,

10  (6) whether excusable neglect caused the default, and

11  (7) the strong policy favoring decisions on the merits.

12  NewGen, LLC v. Safe Cig, LLC, 840 F.3d 606, 616 (9th

13  Cir. 2016) (quoting Eitel v. McCool, 782 F.2d 1470,

14  1471-72 (9th Cir. 1986)).  Additionally, if the

15  defaulting party failed to plead or otherwise defend,

16  the court must determine that it has subject matter and

17  personal jurisdiction.  In re Tuli, 172 F.3d 707, 712

18  (9th Cir. 1999).  When default judgment is granted, the

19  relief awarded "must not differ in kind from, or exceed

20  in amount, what is demanded in the pleadings."  Fed. R.

21  Civ. P. 54(c).

22  **B.  Discussion**

23       1.  Jurisdiction and Service of Process

24            a.  *Jurisdiction*

25                 i.  *Americans with Diabilities Act Claim*

26       The Court has subject matter jurisdiction under 28

27  U.S.C. §§ 1331 and 1343 for violations of the ADA.

28  See, e.g., Civil Rights Educ. & Enf't Ctr. v. Hosp.

1   <u>Props. Tr.</u>, 867 F.3d 1093, 1098 (9th Cir. 2017).

2       Moreover, the Court has personal jurisdiction over

3   Defendant because it has "certain minimum contacts"

4   with California such that "the suit does not offend

5   'traditional notions of fair play and substantial

6   justice.'" <u>Calder v. Jones</u>, 465 U.S. 783, 788 (1984)

7   (quotation omitted).  Specifically, Defendant owns the

8   Store at which the incident giving rise to this Action

9   occurred.  Compl. ¶¶ 2-3; Ex. 5 in Supp of Appl.,

10  Public Records, ECF No. 15-7.

11                  ii. *Unruh Act Claim*

12                      1. *Supplemental Jurisdiction Standard*

13      The Court shall have "supplemental jurisdiction

14  over all other claims that are so related to claims in

15  the action within such original jurisdiction that they

16  form part of the same case or controversy under Article

17  III of the United States Constitution."  28 U.S.C §

18  1367(a).  Nevertheless, the Court has discretion to

19  decline to exercise supplemental jurisdiction:

20      The district courts may decline to exercise
        supplemental jurisdiction over a claim under
21      subsection (a) if—

22      (1) the claim raises a novel or complex issue
        of State law,
23

24      (2) the claim substantially predominates over
        the claim or claims over which the district
        court has original jurisdiction,
25

26      (3) the district court has dismissed all claims
        over which it has original jurisdiction, or

27      (4) in exceptional circumstances, there are
        other compelling reasons for declining
28      jurisdiction.

                            5

28 U.S.C. § 1367(c).

The Supreme Court has described 28 U.S.C. § 1367(c) as a "codification" of the principles of "'economy, convenience, fairness, and comity'" that underscore the Supreme Court's earlier jurisprudence concerning pendent jurisdiction. City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172–73 (1997) (quoting Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988)); see United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) (holding the power to hear state and federal claims together need "not be exercised in every case" . . . "justification lies in considerations of judicial economy, convenience, and fairness to litigants.").

When declining to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(4), "the court must identify the predicate that triggers the applicability of the category (the exceptional circumstances), and then determine whether, in its judgment, the underlying Gibbs values are best served by declining jurisdiction in the particular case (the compelling reasons)." Exec. Software N. Am. Inc. v. U.S. Dist. Court for the Cent. Dist. of Cal., 24 F.3d 1545, 1558 (9th Cir. 1994).

///

///

///

///

2. *The Court Should Decline to Exercise Supplemental Jurisdiction Over Plaintiff's Unruh Act Claim*

In 2012, in response to the overwhelming increase[1] in construction-related accessibility claims,[2] "California adopted heightened pleading requirements for disability discrimination lawsuits under the Unruh Act." <u>Velez v. Il Fornanio (Am.) Corp.</u>, No. 3:18-CV-1840-CAB-MDD, 2018 WL 6446169, at *6 (S.D. Cal. Dec. 10, 2018). California also requires that complaints for construction-related accessibility claims be verified, and if such complaints are not verified, they are subject to a motion to strike. <u>See</u> Cal. Civ. Proc. Code § 425.50(b)(1).

When California continued to experience large numbers of these actions, it imposed additional limitations on "high-frequency litigants."[3] For

---

[1] Nearly nine times more construction-related accessibility actions are being filed in the Central District in 2019 than were in 2013. <u>See</u> <u>Garibay v. Rodriquez</u>, No. CV 18-9187 PA (AFMX), 2019 WL 5204294, at *4 (C.D. Cal. Aug. 27, 2019).

[2] California law defines construction-related accessibility claims as "any civil claim in a civil action with respect to a place of public accommodation, including but not limited to, a claim brought under Section 51, 54, 54.1, or 55, based wholly or in part on an alleged violation of any construction-related accessibility standard." Cal. Civ. Code § 55.52(a)(1).

[3] A high-frequency litigant is defined as a plaintiff who has filed 10 or more complaints alleging a construction-related accessibility violation within the 12-month period immediately preceding the filing of the current complaint alleging a construction-related accessibility violation. Cal. Civ. Proc. Code § 425.55(b)(1).

example, California requires "high-frequency litigants" to pay an increased filing fee of $1,000 in addition to the normal fee at the time of filing a complaint.  Cal. Gov't Code § 70616.5.  Additionally, California mandates that these complaints allege certain facts, including whether the action is filed by, or on behalf of, a high-frequency litigant, the number of construction-related accessibility claims filed by the litigant in the preceding twelve months, the litigant's reason for being in the geographic area of the defendant's business, and the reason the litigant desired to access the business.  <u>See</u> Cal. Civ. Proc. Code § 425.50(a)(4)(A).

Because California's heightened pleading standards and increased filing fees do not apply in federal court, plaintiffs can effectively circumvent the restrictions California has imposed on construction-related accessibility claims by relying on a grant of supplemental jurisdiction over any Unruh Act claims when combined with an ADA claim for injunctive relief.

In enacting these restrictions and additional fees, California sought to limit the burden these types of cases put on its businesses.  But in filing these Actions in federal courts, plaintiffs have managed to avail themselves of the state law provided statutory damages all while evading California's limitations as to reaching such awards.  This situation, as well as the increased burden on federal courts due to the

increasing number of these cases presents the type of "exceptional circumstances" and "compelling reasons" that justify a court's discretion to decline to exercise supplemental jurisdiction over any Unruh Act or other state law claims under 28 U.S.C. § 1367(c)(4).

Here, Plaintiff is a frequent ADA litigator who has filed over 300 cases in the Central District since 2014. "It is not . . . 'fair' to defendants that [Plaintiff] may pursue construction-related accessibility claims in [federal court] while evading the limitations California has imposed on such claims." Garibay v. Rodriquez, No. CV 18-9187 PA (AFMX), 2019 WL 5204294, at *5 (C.D. Cal. Aug. 27, 2019). Further, allowing federal courts to act as a safe haven for these claims clearly offends the comity between federal and state courts.

As such, the Court should conclude that given these "exceptional circumstances," "compelling reasons" exist to support the Court's decision to decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim. In doing so, the Court has not deprived Plaintiff of any remedies, as the ADA claim remains before this Court, and Plaintiff may, if he so chooses, pursue his Unruh Act claim in state court—the appropriate forum for such claim under these circumstances.[4]

---

[4] Plaintiff encountered the barriers in July 2019. As such, the statute of limitations for Plaintiff's Unruh Act claim has

1  Therefore, the Court should **DECLINE** to exercise
2  supplemental jurisdiction over Plaintiff's Unruh Act
3  claim.

4  b. *Service of Process*

5  Additionally, Defendant was properly served under
6  Rule 4. See <u>Direct Mail Specialists, Inc. v. Eclat</u>
7  <u>Computerized Techs., Inc.</u>, 840 F.2d 685, 688 (9th Cir.
8  1988) ("A federal court does not have jurisdiction over
9  a defendant unless the defendant has been served
10 properly under [Rule] 4.") (citation omitted). Federal
11 Rule of Civil Procedure ("Rule") 4 provides that a
12 corporation may, among other means, be served "by
13 delivering a copy of the summons and of the complaint
14 to an officer, a managing or general agent, or any
15 other agent authorized by appointment or by law to
16 receive service of process." Accordingly, service on
17 Defendant's agent was proper. See Proof of Service,
18 ECF No. 9 (documenting that the summons and Complaint
19 were served by personal service on a person authorized
20 to receive service for Defendant).

21 2. <u>Local Rule 55-1</u>

22 Plaintiff satisfied the procedural requirements for
23 default judgment under Local Rule 55-1. The Clerk
24 entered default against Defendant as to the Complaint

25 ─────────────

26 not lapsed and Plaintiff is able to bring this claim in state
   court where it can be properly adjudicated. <u>See</u> <u>Harris v. County</u>
27 <u>of San Diego</u>, CV 18-924-BTM-AHG, 2019 WL 6683367, at *4 (S.D.
   Cal. Dec. 5, 2019) ("The claims under Cal Civ. Code §§ 43, 49,
28 51, and 52 are subject to a two-year statute of limitations")
   (citing Cal. Civ. Code P. § 335.1).

1   on September 23, 2019.  Defendant is not an infant,
2   incompetent person, or exempted under the
3   Servicemembers Civil Relief Act.  Decl. of Russell
4   Handy in Supp. of Appl. ("Handy Decl.") ¶ 2, ECF No.
5   15-3.  Moreover, Plaintiff served Defendant with notice
6   of its Application on November 14, 2019.  Id. ¶ 6.
7        3.  *Eitel* Factors
8        Here, the Eitel factors favor granting default
9   judgment as to Plaintiff's ADA claim.
10            a.  *Factor 1: Prejudice to Plaintiff*
11        A court must first consider whether a plaintiff
12  will suffer prejudice if default judgment is not
13  entered.  See Eitel, 782 F.2d at 1471 (citation
14  omitted).  Here, Defendant failed to respond to the
15  Complaint or otherwise appear.  Without default
16  judgment, Plaintiff likely will have no recourse for
17  recovery.  See Landstar Ranger, Inc. v. Parth Enters.,
18  725 F. Supp. 2d 916, 920 (C.D. Cal. 2010); PepsiCo,
19  Inc. v. Cal. Sec. Cans, 238 F. Supp. 2d 1172, 1177
20  (C.D. Cal. 2002).  Thus, this factor favors default
21  judgment.
22            b.  *Factors 2 & 3: Sufficiency of the*
23                *Complaint and Merits of the Claim*
24        The second and third Eitel factors call for an
25  analysis of the causes of action.  See Eitel, 782 F.2d
26  at 1471 (citation omitted).  Here, Plaintiff's ADA
27  claim is sufficiently stated and meritorious, and as
28  such, these factors favor default judgment as to this

1  claim.

2                 i.   *Violation Under the ADA*

3       To prevail under the ADA, a plaintiff must

4  establish that "(1) she is disabled within the meaning

5  of the ADA; (2) the defendant . . . owns, leases, or

6  operates a place of public accommodation; and (3) the

7  plaintiff was denied public accommodations by the

8  defendant because of her disability."  <u>Molski v. M.J.</u>

9  <u>Cable, Inc.</u>, 481 F.3d 724, 730 (9th Cir. 2007) (citing

10  42 U.S.C. § 2182(a)-(b)).

11       According to the ADA, a disability is "a physical

12  or mental impairment that substantially limits one or

13  more major life activities," including walking.  42

14  U.S.C. §§ 12102(1)(A), (2)(A).  Plaintiff's paraplegia

15  prevents him from walking, and Plaintiff relies on a

16  wheelchair for mobility.  Decl. Of Rafael Arroyo, Jr.

17  in Supp. of Appl. ("Arroyo Decl.") ¶ 2, ECF No. 15-4.

18  Therefore, Plaintiff is disabled.  Further, Plaintiff

19  has established that Defendant's business is a place of

20  public accommodation.  Compl. ¶ 9.  Specifically,

21  Defendant's business is a Store.  <u>Id.</u> ¶ 3.  The ADA

22  explicitly recognizes that a "grocery store, clothing

23  store, hardware store, shopping center, or other sales

24  or rental establishment" is a place of public

25  accommodation.  <u>See</u> 42 U.S.C. § 12181(7)(E).

26       Under the ADA, discrimination includes "failure to

27  remove architectural barriers . . . where such removal

28  is readily achievable . . . ."  42 U.S.C.

§ 12182(b)(2)(A)(iv).  ADA Accessibility Guidelines ("ADAAG") establish the technical standards for determining whether a barrier exists.  <u>Fortyune v. Am. Multi-Cinema, Inc.</u>, 364 F.3d 1075, 1080-81 (9th Cir. 2004) (these guidelines "lay out the technical structural requirements of places of public accommodation . . . .").

The lack of accessible sales counters constitutes a barrier under the ADA.  The ADA requires that, a portion of the sales counter must be no higher than 36 inches above the floor and 36 inches in width.  <u>See</u> 36 C.F.R. § Pt. 1191, App. D §§ 904.4,904.4.1.  Here, Plaintiff alleges that the sales counters in the Thrifty ice cream section of the Store are not in compliance with the ADAAG.  <u>See</u> Compl. ¶ 10. Specifically, the sales counter is allegedly 55 inches above the floor, and there is no lowered portion.  <u>See</u> Decl. of Evans Louis in Supp. of Appl. ("Louis Decl.") ¶ 3, ECF No. 15-5.  Additionally, an electronic point of sale machine is mounted on top of the counter, and the buttons on the machine are as high as 63 inches from the floor.  <u>Id.</u>

Additionally, Plaintiff alleges that Defendant fails to provide an accessible restroom.  Compl. ¶ 15. Specifically, the plumbing underneath the sink is not wrapped to prevent against burning on contact.  Louis Decl. ¶ 4.  Such failure to insulate the plumbing constitutes a barrier under the ADA.  <u>See</u> 36 C.F.R.,

Pt. 1191, App. D § 606.5 ("Water supply and drain pipes under lavatories and sinks shall be insulated or otherwise configured to protect against contact.").

Because the inaccessible sales counters and inaccessible restroom constitute barriers related to Plaintiff's paraplegia, Plaintiff was denied full and equal access to the Store in violation of the ADA.

The next issue is whether removal of these barriers is readily achievable.[5]  The Ninth Circuit has not decided which party has the burden of proving that removal of an architectural barrier is readily achievable.  Moore v. Robinson Oil Corp., 588 Fed. Appx. 528, 529-30 (9th Cir. 2014).  The majority of district courts apply the Tenth Circuit's burden-shifting scheme, which requires the plaintiff to bear the initial burden of producing evidence that supports a finding that removal is readily achievable, and which only then shifts the ultimate burden of persuasion to the defendant.  See Vogel v. Rite Aid Corp., 992 F. Supp. 2d 998, 1010 (C.D. Cal. 2014) (citing Colo. Cross Disability Coal. v. Hermanson Family, Ltd., 264 F.3d 999 (10th Cir. 2001)).

Here, Plaintiff alleges that the barriers at issue "are easily removed without much difficulty or

---

[5] Plaintiff argues that removal of the barrier is an affirmative defense that is waived unless raised.  Appl. 5:25-6:2.  This Court, in McComb v. Vejar, No. 2:14-CV-00941-RSWL-E, 2014 WL 5494017, at *6 (C.D. Cal. Oct. 28, 2014), already rejected this contention, raised by the same counsel, in the context of a default judgment proceeding.

expense." Compl. ¶ 17.   Moreover, Plaintiff claims that "there are numerous alternative accommodations that could be made to provide a greater level of access if complete removal were not achievable." Id.   These allegations are sufficient to satisfy Plaintiff's burden.[6]

Because Plaintiff has adequately pled that: (1) he is disabled within the meaning of the ADA; (2) Defendant owns and operates a place of public accommodation; (3) Plaintiff was denied full and equal access to the public accommodation because of his disability, and (4) removal of the barriers is readily achievable, Plaintiff has sufficiently stated a meritorious claim under the ADA.

### ii. *Violation of the Unruh Act*

Because Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim, the Court need not assess whether Plaintiff has sufficiently stated a claim for violation of the Unruh Act.

### c. *Factor 4: Money at Stake*

The fourth Eitel factor addresses the sum of money at stake in the action.   Eitel, 782 F.2d at 1471 (citation omitted).   "Default judgment is disfavored

---

[6] Plaintiff does not allege specific facts regarding the ease of removing the barriers; however, Plaintiff's general allegations combined with Plaintiff's corroborating photos show that the barriers would be easily corrected, satisfying his initial burden.

where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." Vogel, 992 F. Supp. 2d at 1012.

Here, Plaintiff seeks a statutory penalty of $4,000, as well as $4,321 in attorneys' fees and costs. See Appl. 8:13; Handy Decl., Billing Summary  Because the Court declines to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim, the Court finds that the $4,000 statutory penalty sought is unreasonable.  However, the ADA provides for reasonable attorneys' fees and costs.  42 U.S.C. § 12205. Accordingly, the Court finds that the amount of attorneys' fees and costs sought in this Action is reasonable.  Therefore, because the amount of money Plaintiff seeks is unreasonable as to the statutory damages but is reasonable as to attorneys' fees and costs, this factor does not heavily weigh in the analysis of whether default judgment should be granted.

d. *Factor 5: Dispute of Material Fact*

The fifth Eitel factor is the likelihood of a dispute as to material facts.  Eitel, 782 F.2d at 1471-72 (citation omitted).  Defendant has not answered or otherwise appeared in this Action.  Since Plaintiff's factual allegations are presumed true in this situation and Defendant failed to move to set aside the default, no factual dispute exists that would preclude the entry of default judgment.  See Vogel, 992 F. Supp. 2d at 1013 ("Since [Plaintiff's] factual allegations are

16

presumed true and Knight has failed to oppose the
motion, no factual dispute exists that would preclude
the entry of default judgment."). Thus, this factor
weighs in favor of default judgment.

> e. *Factor 6: Excusable Neglect*

Next, courts consider whether the default was due
to some excusable neglect. <u>Eitel</u>, 782 F.2d at 1472
(citation omitted). Defendant was properly served on
August 29, 2019, and Plaintiff served notice of this
Application on November 14, 2019. Nevertheless,
Defendant has neither appeared in this Action nor
offered any explanation for its default. Accordingly,
this factor weighs in favor of granting default
judgment. <u>Vogel</u>, 992 F. Supp. 2d 998 (finding "it
reasonable to infer [the] default was not the product
of excusable neglect" where defendant was properly
served).

> f. *Factor 7: Public Policy*

The seventh <u>Eitel</u> factor considers the strong
policy favoring rulings on the merits. <u>Eitel</u>, 782 F.2d
at 1472 (citation omitted). Notwithstanding such
policy, default judgment is appropriate "[w]here the
[d]efendant's failure to appear makes decision on the
merits impossible." <u>Warner Bros. Home Entm't, Inc. v.
Slaughter</u>, No. CV 13-0892-DOC (RNBx), 2013 U.S. Dist
LEXIS 156597, at *9 (C.D. Cal. Oct. 30, 2013) (citing
<u>Craigslist, Inc. v. Naturemarket, Inc.</u>, 694 F. Supp. 2d
1039, 1061 (N.D. Cal. 2010)). As a result, and because

a weighing of the _Eitel_ factors tips in favor default judgment, the Court **GRANTS** Plaintiff's Application as to Plaintiff's ADA claim.

   4.   Relief

   In seeking default judgment, "Plaintiff is required to prove all damages sought in the [C]omplaint." _Philip Morris USA Inc. v. Castworld Prods._, 219 F.R.D. 494, 498 (C.D. Cal. 2003).  Here, Plaintiff seeks an injunction, damages, attorneys' fees, and costs.

        a.  _Injunctive Relief_

   Under the ADA, a plaintiff is entitled to injunctive relief, including an order to make "facilities readily accessible to and usable by individuals with disabilities."  42 U.S.C. § 12188(a)(2).  Here, Plaintiff requests an order directing Defendant to provide: (1) accessible sales counters; and (2) an accessible restroom, as required by the ADA.  As such, the Court **ORDERS** Defendant to provide ADA-compliant accessible sales counters and an accessible restroom.

        b.  _Damages_

   Here, Plaintiff seeks $4,000.00 in statutory penalties for Defendant's alleged violation of the Unruh Act.  Because the Court should decline to exercise supplemental jurisdiction over Plaintiff's Unruh Act Claim, the Court **DENIES** Plaintiff's request for damages.

///

1          c.   *Attorneys' Fees*

2      Plaintiff requests that the Court award $3,791 in

3  attorneys' fees.  The ADA authorizes attorneys' fees in

4  this matter.  42 U.S.C. § 12205; Cal. Civ. Code

5  § 52(a); <u>see</u> <u>Jankey v. Poop Deck</u>, 537 F.3d 1122, 1130

6  (9th Cir. 2008) ("A prevailing plaintiff under the ADA

7  should ordinarily recover an attorney's fee unless

8  special circumstances would render such an award

9  unjust.") (internal quotation marks omitted).

10     For ADA cases, reasonable attorneys' fees are

11  determined by reference to the lodestar method.  <u>Vogel</u>

12  <u>v. Harbor Plaza Center, LLC</u>, 893 F.3d 1152 (9th Cir.

13  2018) (finding that it was an abuse of discretion for

14  the district court to treat the Local Rule 55-3 fee

15  schedule, which is ordinarily used in instances of

16  default judgment, as presumptively reasonable, rather

17  than using a lodestar approach to calculate attorneys'

18  fees for ADA and Unruh civil rights cases).  A court

19  "must first determine the presumptive lodestar figure

20  by multiplying the number of hours reasonably expended

21  on the litigation by the reasonable hourly rate."

22  <u>Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.</u>, 668 F.3d

23  677, 689 (9th Cir. 2012) (quotation omitted).  The fee

24  applicant must "produce satisfactory evidence—in

25  addition to the attorney's own affidavits—that [his]

26  requested [hourly] rates [were] in line with those

27  prevailing in the community for similar services by

28  lawyers of reasonably comparable skill, experience and

1  reputation." <u>Grove v. Wells Fargo Fin. Cal., Inc.</u>, 606
2  F.3d 577, 583 (9th Cir. 2010) (quoting <u>Blum v. Stenson</u>,
3  465 U.S. 886, 896 n.11 (1984)).  The fee applicant
4  bears "the burden of documenting the appropriate hours
5  expended in the litigation" and of "submit[ting]
6  evidence in support of those hours worked." <u>USW v.
7  Ret. Income Plan for Hourly-Rated Emps. of ASARCO,
8  Inc.</u>, 512 F.3d 555, 565 (9th Cir. 2008) (quotation
9  omitted).
10      Here, Plaintiff seeks $3,791 in fees based on the
11  work of Mark Potter, Russell Handy, and Phyl Grace.
12  Handy Decl., Billing Statement.  Plaintiff seeks hourly
13  rates for each attorney as follows:
14      •  Mark Potter: $595
15      •  Russell Handy: $595
16      •  Phyl Grace: $450
17      In support of this request, Mr. Handy submits a
18  declaration discussing the qualifications of the
19  attorneys who billed to this Action.  Qualifications
20  include the attorneys' experience in disability
21  litigation, success in law school, and involvement in
22  disability-related organizations.  <u>See</u> Handy Decl. ¶¶
23  8-10.  However, other than Mr. Handy's declaration,
24  including his statement that he "can attest that the
25  rates billed by the Center for Disability Access for
26  its attorneys are well within market rates" and the
27  inclusion of two fee awards, Handy Decl. ¶ 12,
28  Plaintiff provides no evidence establishing that the

1 rates were in line with those prevailing in the
2 community.

3       "Notwithstanding Plaintiff's failure to present
4 sufficient evidence supporting the rates he seeks,
5 '[d]istrict judges can . . . consider the fees awarded
6 by other judges in the same locality in similar
7 cases.'"  <u>Johnson v. Lin</u>, No. 2:13-cv-01484-GEB-DAD,
8 2016 WL 1267830, at *4 (E.D. Cal. March 31, 2016)
9 (quoting <u>Moreno v. City of Sacramento</u>, 534 F.3d 1106,
10 1115 (9th Cir. 2008)).  After reviewing awards in
11 similar cases, including similar cases before this
12 Court,[7] as well as the attorneys' qualifications as
13 stated in Mr. Handy's Declaration, the Court concludes
14 that the following hourly fees are reasonable:[8]

15       •   Mark Potter: $425

16       •   Russell Handy: $425

17       •   Phyl Grace: $425

18 ///

19 _____

20       [7] In <u>Langer v. Palacios et al.</u>, CV 19-05196-RSWL-AGR (C.D.
Cal. Oct. 10, 2019), the same Plaintiff's counsel requested the
21 following rates in a nearly identical action less than three
months prior :
22             • Mark Potter: $425
             • Russell Handy: $425
23             • Phyl Grace: $425

24       [8]  <u>See</u>, <u>e.g.</u>, <u>Love v. Bedi & Sons, LLC</u>, No. EDCV 18-0829-FMO
25 (PLAx), 2019 WL 1785446, at *5 (C.D. Cal. Feb. 6, 2019), Decl. of
Dennis Price in Supp. Pl.'s Appl. for Default J, ECF No.24-4.
26 (determining $425/hour for M. Potter, R. Handy, and P. Grace as
well as $350/hour for D. Price reasonable attorneys' fees);
27 <u>accord</u> <u>Kong v. Pulido</u>, SACV 18-01943-AG (KESx), 2019 WL 1751843,
at *2 (C.D. Cal. Mar. 18, 2019); <u>Fernandez v. Alfred Santos</u>
28 <u>Family P'ship</u>, CV-19-2334-CJC (AGRx), 2019 WL 4137616, at *4
(C.D. Cal. July 24, 2019).

The next issue is whether the hours spent in this Action are reasonable.  Plaintiff submits an itemized Billing Statement, which reflects that Plaintiff's attorneys spent 6.5 hours litigating this case.  <u>See</u> Handy Decl., Billing Statement.  After reviewing the Billing Statement, the Court should conclude that a portion of the hours spent in this Action are unreasonable.[9]

Specifically, senior attorney, Mr. Handy, billed .7 hours to "draft the complaint & interoffice barrier memo."  Handy Decl., Billing Statement.  Given that Plaintiff's counsel files nearly identical complaints in all of its cases, save for a few distinguishing details of fact, the Court should find that .7 hours to draft the Complaint and an interoffice memo is unreasonable.  Accordingly, the court should reduce this billing item to .4 hours.

Additionally, Mr. Handy billed 1.1 hours to draft the instant Application and supporting declaration. The Court again notes that the Application and supporting attorney declaration are nearly identical to the multitude of other default judgment applications and attorney declarations filed by Plaintiff's counsel. Accordingly, the Court should find that the 1.1 hours spent on this task was unreasonable, and should reduce

---

[9] It is worth noting that in <u>Lopez v. Macca Corp.</u>, No. CV 18-2589-RSWL-E, 2018 WL 5310770, at *6 (C.D. Cal. Oct. 22, 2018), this Court found similar billing practices unreasonable by the same counsel.

this item to .6 hours.

Lastly, Mr. Handy billed 1.8 hours in which he "[c]onducted public records research to determine the identity of the responsible parties; then pulled the online microfiche records for Los Angeles County for Assessor Parcel No. 5419-019-025 to determine if there had been alterations or modifications that would have triggered stricter Title 24 obligations for this property; notes to file" Id. But, "[a] basic public records search to identify the owner of the Property is not the type of legal work that should be billed by an attorney at $425 per hour." Love v. Garcia, No. 5:15-CV-02004-CAS-SPX, 2017 WL 2927429, at *4 (C.D. Cal. July 7, 2017) (concluding that plaintiff could not recover for fees associated with the aforementioned unreasonable tasks). Because the billing for these tasks was unreasonably expended, the Court excludes them from the attorneys' fee award.[10]

---

[10] The Court is cognizant of the Ninth Circuit's admonition in Moreno v. City of Sacramento, 534 F.3d 1106 (9th Cir. 2008) that a district court "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." Id. at 1115. Rather, "[t]he difficulty and skill level of the work performed, and the results achieved—not whether it would have been cheaper to delegate the work to other attorneys—must drive the district court's decision." Id. Nonetheless, proceeding under this framework, the "time estimates of certain tasked performed appear over-inflated compared to the nature of this litigation and the difficulty of skill required to complete the work." Uriarte-Limon v. Walker, EDCV 16-377 JGB (DTBx), 2017 WL 5665017, at *4 (C.D. Cal. Sept. 21, 2017). The Court's analysis of the reasonableness of the requested attorneys' fees focuses on the "difficulty and skill level of the

See <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 434 (1983)

("The district court . . . should exclude from [its]

initial fee calculation hours that were not 'reasonably

expended' . . . . hours that are excessive, redundant,

or otherwise unnecessary.") (citations omitted).

Ultimately, with the adjusted billing rates and the

exclusion of the unreasonable itemized tasks, the Court

**GRANTS** $1,785 in attorneys' fees.

        d. *Litigation Costs*

    The ADA authorizes the Court to award costs in this

matter. 42 U.S.C. § 12205. Plaintiff seeks to

recover $400 in filing fees, $30 costs, and $100 in

investigator fees, totaling $530 which the Court

**GRANTS**.

**III. CONCLUSION**

    Based on the foregoing, the Court **GRANTS**

Plaintiff's Application for Default Judgment as to

Plaintiff's ADA claim and **ORDERS** Defendant to provide

ADA compliant sales counters and an accessible

restroom. The Court awards Plaintiff $1,785 in

---

work performed." <u>Moreno</u>, 534 F.3d at 1115. The Court excludes
several billed tasks from the fee award not because they could
have been performed at a cheaper rate by more junior attorneys,
but because they are unnecessary and excessive in light of the
skill required to accomplish them. This is particularly so
considering that they were accomplished by senior attorneys, who
are well versed in ADA litigation, and the case appears fairly
straight-forward. See <u>Delson v. CYCT Mgmt. Grp., Inc.</u>, No. 11-
cv-03781 MEJ, 2013 WL 1819265, at *8 (N.D. Cal. Apr. 30, 2013)
("'One of the trade offs of being an expert in a specific field
of law is the expectation that tasks will be completed with
greater efficiency because the knowledge base and resources have
already been well-established.'").

attorneys' fees and $530 in costs, totaling $2,315.
The Court **DECLINES** to exercise supplemental
jurisdiction over Plaintiff's Unruh Act claim and
thereby **DISMISSES** the claim **without prejudice**.

**IT IS SO ORDERED.**

DATED: 01/31/2020        s/ RONALD S.W. LEW
                         **HONORABLE RONALD S.W. LEW**
                         Senior U.S. District Judge